**STATE of Tennessee, Appellee,**

**v.**

**Danny L. HENDERSON, Appellant.**

Court of Criminal Appeals of Tennessee, at Nashville.

July 7, 1981.

Permission to Appeal Denied by Supreme Court Nov. 9, 1981.

John C. Zimmermann, Asst. Atty. Gen., Nashville, Robert H. Gay, Dist. Atty. Gen., Lawrenceburg, Clayton Lee, Asst. Dist. Atty. Gen., Pulaski, for appellee.

Joe F. Fowlkes, Pulaski, for appellant.

OPINION

DAUGHTREY, Judge.

The appellant-defendant, Danny L. Henderson, was convicted of aggravated rape and sentenced to 15 years imprisonment. Because the State failed to prove circumstances amounting to aggravated rape under T.C.A. § 39–3703, we conclude that the offense for which the defendant was convicted must be reduced to rape.

The evidence showed that on February 24, 1980, the defendant entered a Giles County motel owned and operated by the victim's son. The victim was filling in for

her son at the time, taking care of the registration desk. Henderson asked if he could wait in the office for a friend. Within a few minutes, however, he entered the adjacent manager's apartment where the victim was seated working a puzzle, grabbed her, and forced her onto a bed. She initially resisted and attempted to flee, but under repeated threats of an unspecified nature, she eventually submitted in fear to the defendant's assault. The victim testified to Henderson's act of penetration and subsequent threats against her, but conceded that she had "not really" suffered any physical harm. She described her reaction to the rape as "mainly emotional."

The crime of aggravated rape, T.C.A. § 39–3703, requires proof of penetration accompanied by one of several enumerated circumstances. The indictment in this case charged that the defendant effected sexual penetration by force or coercion, causing "personal injury" to the victim, which, if proved, would establish aggravated rape under T.C.A. § 39–3703(a)(2). "Personal injury" is defined by T.C.A. § 39–3702(9) to mean "bodily injury or serious bodily injury as defined in § 39–601." The definition of bodily injury contained in that statute includes "illness or impairment of the function of a bodily member, organ, or mental faculty." By contrast, under T.C.A. § 39–3705, rape is the "unlawful sexual penetration of another accompanied by . . . force or coercion."

■ The State asks us to sustain the defendant's conviction for aggravated rape on the basis of the testimony of James F. Cooper, a clinical psychologist who treated the victim for what he called the "normal emotional trauma" associated with the crime of rape. The State argues that Cooper's testimony establishes the existence of an "impairment of [the victim's] mental faculty," which, although temporary, is sufficient to satisfy the definition of "personal injury" under T.C.A. §§ 39–3702(9) and 39–601. However, a review of the record indicates that Cooper's testimony was secured outside the presence of the jury. Moreover,

before the jury returned to the courtroom, the State was granted leave to withdraw Cooper's testimony. Obviously it cannot now be relied upon to establish the existence of a necessary element of the offense.

■ Nor do we find that the victim's testimony alone is sufficient to sustain the more serious offense of aggravated rape. There is nothing to suggest that her "emotional reaction" to the offense rose to the level of an impairment of her mental faculties, temporary or otherwise. Rape is a reprehensible crime, and one would expect the response of a rape victim to be highly emotional in nature. But we are not prepared to say that the legislature intended to equate emotional distress with "impairment of a mental faculty," for the reasons set out below.

The experts now seem unanimous in their conclusion that rape is not so much a crime of sex as it is a crime of violence against the victim. In this sense, it is difficult to envision a rape that does not involve "personal" injury or trauma to the victim, if only of psychic dimensions. However, this fact alone would not automatically convert a rape into an aggravated rape, or there would be no need for a distinction between these two separate offenses as set out in § 39–3703 and § 39–3705.

In an analogous situation, the California Court of Appeal was asked to determine whether physical ailments (nose bleeds, fainting, and stomach aches) suffered by the kidnapped Chowchilla school children constituted "bodily harm" within the meaning of California's aggravated kidnapping statute, which provided for an enhanced penalty for conviction of kidnapping in which the victim suffered "bodily harm." Testimony at trial established that the children's ailments were not inflicted directly by the defendants but were the result of "acute anxiety" engendered by the children's collective "ordeal of terror." *People v. Schoenfeld,* 111 Cal.3d 671, 168 Cal.Rptr. 762, 766–67 (1980). Quoting from an earlier case,[1] the *Schoenfeld* Court noted:

---

1. *People v. Jackson,* 44 Cal.2d 511, 282 P.2d 898 (1955).

If the more serious penalty may be imposed when the only injury is of a nature similar to that shown by the present record, which concededly is almost necessarily an incident to every forcible kidnaping, neither the purpose of enhancement of the penalty for the more heinous crime nor the intention of deterring the kidnaper from killing or injuring his victim is subserved. On the contrary, if there necessarily be bodily injury in almost every kidnapping sufficient to warrant imposition of the more serious penalty, the kidnaper might well reason that the better course for him would be to kill the victim to minimize the probability of identification.

168 Cal.Rptr. at 769–70. Thus, the Court concluded,

> . . . *all* kidnapings involve some degree of suffering insofar as mental distress or emotional harm is relatively manifested. If, as the People contend, such evidence alone (with or without minor physical symptoms) is sufficient, then conceptually every forcible restraint and confinement would be automatically subject to the augmented penalty without the essential showing of substantial bodily injury. Such an unreasonable result would totally defeat the dual purpose of preventing physical harm to the victim and providing an added penalty for the more abhorrent criminal conduct.

*Id.* at 772.

In construing the legislature's intent in creating an enhancement statute such as the one before us, it is axiomatic that the courts must give meaning to the plain language of the statute. *Key v. State*, 563 S.W.2d 184, 187–88 (Tenn.1978). We conclude that if the legislature had meant to qualify emotional distress as an element of "bodily injury" or "serious bodily injury," it would have been included in the lengthy enumeration of factors set out in T.C.A. §§ 39–3702(9) and 39–601. It seems clear

that this was not done because, as noted above, if "impairment of mental faculty" includes emotional distress of the kind normally associated with the crime of rape, there can be no meaningful distinction between the offense of rape and that of aggravated rape. In any event, the law clearly recognizes that in construing a criminal statute, any reasonable doubt as to its intended meaning must be resolved in favor of the defendant. *Key v. State, supra,* 563 S.W.2d at 188.

■ The dissenting judge in the instant case maintains that the question of "impairment of mental faculty" was one of fact for the jury to determine, based on the victim's very limited testimony concerning her emotional distress following the rape. But there was no dispute at trial concerning the psychological trauma she experienced, and we conclude, as did the court in *Schoenfeld,* that "where the underlying facts are undisputed—as here shown—the question whether such probative facts support the conclusions drawn becomes one of law reviewable on appeal." *People v. Schoenfeld, supra,* 168 Cal.Rptr. at 767. Moreover, this Court has previously reviewed undisputed facts in order to determine whether they supported an enhanced penalty as a matter of law. *See, e. g., State v. Rollins,* 605 S.W.2d 828 (Tenn.Crim.App.1980).

We therefore conclude that the judgment in this case must be modified to reflect Henderson's conviction of rape, under T.C.A. § 39–3705. Pursuant to the holding of *Huffman v. State,* 200 Tenn. 487, 292 S.W.2d 738, 742–45 (1956), we further modify the defendant's sentence to five years, the minimum penalty provided by § 39–3705(b). This modification in penalty is conditioned upon the State's agreement to the imposition of a five year sentence. In the absence of such agreement, the case will be remanded for a hearing on punishment alone. *See Huffman v. State, supra.*[2]

---

**2.** It is unfortunate that another hearing may be necessary in this case, since the jury could have set the same penalty (15 years) against this defendant for rape as they set for aggravated rape. Thus it is apparent that if the State

had originally decided to charge the defendant with rape under T.C.A. § 39–3705(a)(1), or if the State had abandoned the aggravated rape charge at the same time the testimony of the State's expert witness was withdrawn, both the

The only other matter raised on appeal concerns the defendant's insistence that the ruling of the trial judge which forced him to display to the jury a distinctive tattoo on his arm violated his Fifth Amendment right against self-incrimination. The defendant cites no authority to support this proposition, and we conclude that the law is to the contrary. *See, e. g., Black v. State,* 479 S.W.2d 656, 658 (Tenn. Crim.App.1972). We thus find no error in connection with this issue.

For the reasons set out above, the judgment is modified to reflect the defendant's conviction of rape, with a sentence of five years imprisonment subject to the State's consent.

BYERS, J., concurs.

DWYER, J., dissents.

DWYER, Judge, dissenting.

I am in respectful disagreement with my colleagues in reducing this offense from aggravated rape to rape with resulting reduction of punishment from fifteen to five years.

With the clinical psychologist's testimony offered outside the jury and withdrawn by the State at the trial, I am in complete accord with their rejection of the State's argument that the testimony of the clinical psychologist established the necessary element, "personal injury", for the offense of aggravated rape, T.C.A. § 39–3703.

Notwithstanding, I am of the opinion that the victim's testimony raised a jury question as to whether or not this rape was aggravated.

In order to prove aggravated rape, the State must demonstrate that the defendant caused "personal injury" to the victim. Personal injury as defined in T.C.A. § 39–3702(9) encompasses bodily injury which is defined in T.C.A. § 39–601(a)(1):

"(1) Bodily injury includes a cut, abrasion, bruise, burn, or disfigurement; physical pain; illness or *impairment of the function of* a bodily member, organ, or mental faculty." (Emphasis supplied.)

The victim's testimony revealed that during the assault she was "petrified" and when he left she was in shock and could not move. Her mental condition was a "disaster". She related that physically, she was hurt in small ways but not compared to how she was mentally. Further, after the assault the victim had been to a mental health center.

I will agree with the majority and its reliance on *People v. Schoenfield,* 111 Cal.3d 671, 168 Cal.Rptr. 762 (1980), in which that court was construing an aggravated kidnapping statute and held that physical distress consisting of stomach aches, nose bleeds and fainting *at the time of the crime* did not justify a conviction for aggravated kidnapping. These type injuries are a far cry from the case *sub judice* where the victim months later testified, "I could never forget him. I still have nightmares." Moreover, the California statute involving bodily harm was judicially defined to require a substantial or serious injury to the body of the kidnapped victim, whereas our legislature has seen fit to proscribe that bodily injury *or* serious bodily injury as defined in T.C.A. § 39–601(a)(1)(2) will justify an aggravated rape conviction.

In *People v. Hines,* 194 Colo. 284, 572 P.2d 467, 470 (1977), the Supreme Court of Colorado in interpreting a first degree kidnapping statute had this to say about the term "bodily injury":

"Bodily injury is defined as physical pain, illness, or any impairment of physical or mental condition. (Citation omitted.) Admittedly, this is a broadly inclusive definition; nevertheless it creates a meaningful distinction between cases in which bodily injury is inflicted and those in which it is not. To support a finding of bodily injury the prosecution must prove at least some physical pain, illness or physical or mental impairment, *however slight,* was caused by the kidnapper." (Emphasis supplied.)

necessity of protracted litigation and the possibility of a retrial or rehearing in this case would

have been avoided, while the resulting penalty might well have been the same.

**642**

The evidence as narrated clearly indicates that the State met this burden and no forced construction of the statute would arise in holding that a jury question was presented as to whether there was an impairment of the victim's mental faculty. As the United States Supreme Court said in *Coker v. Georgia*, 433 U.S. 584, 597, 598, 97 S.Ct. 2861, 2869, 53 L.Ed.2d 982 (1977):

"Rape is very often accompanied by physical injury to the female and can also inflict mental and psychological damage."

The verdict of guilt for aggravated rape was supported by the evidence and is compatible with the law.

While not controlling, the majority with reliance on *Rollins v. State*, 605 S.W.2d 828 (Tenn.Cr.App.1980), reasons that review of this issue as a matter of law is permissible since the facts as to the mental injuries were undisputed. Inherent in appellate review such authority exists. *Leake v. State*, 10 Hump. 144 (Tenn.1849); however, I cannot subscribe to the reasoning that this court can make a factual determination of what is and what is not a "personal injury", T.C.A. § 39–3703(a)(2), *i. e.*, impairment of mental faculty, T.C.A. § 39–601(a)(1), when there is evidence in the record as here to support the jury's determination that the appellant was guilty of aggravated rape. We should not usurp the jury's findings with our own "fact finding". To do so, I think, exceeds our bounds on appellate review.

In closing, in light of the victim's testimony it is unarguable that her mental faculty as a result of this rape has not been impaired.* In all probability her functioning normally again as the same grandmother, mother and wife is seriously questioned. I cannot subscribe to reducing the punishment of this convicted rapist. I would affirm the judgment.

---

* In so holding, this writer does not feel that all rapes are aggravated and under certain circumstances a rape charge under T.C.A. § 39–3705

may be warranted in the clear absence of any evidence as required by T.C.A. § 39–3703.