# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 2, 2014

## STATE OF TENNESSEE v. NORMAN MCDOWELL

**Appeal from the Criminal Court for Shelby County**
**No. 13-01115    Chris B. Craft, Judge**

---

**No. W2014-00301-CCA-R3-CD  - Filed February 10, 2015**

---

Appellant, Norman McDowell, was convicted of aggravated robbery, a Class B felony; two counts of aggravated rape, Class A felonies; and aggravated statutory rape, a Class D felony. The trial court merged appellant's aggravated rape convictions and sentenced appellant to an effective twenty-two-year sentence.  On appeal, appellant argues that the evidence at trial was insufficient to support his aggravated rape and aggravated robbery convictions. Following our review of the briefs, the record, and the applicable law, we reduce one of appellant's merged aggravated rape convictions to rape, affirm the trial court's judgments as modified, and remand to the trial court for a new sentencing hearing.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed as Modified; Remanded**

ROGER A. PAGE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

Stephen C. Bush, District Public Defender; and Harry E. Sayle III (on appeal) and Trent Hall (at trial), Assistant District Public Defenders, Memphis, Tennessee, for the appellant, Norman McDowell.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Christopher Judson Lareau, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

This case concerns the taking of $1200 and a cellular telephone from a man while the perpetrator pointed a gun at the victim and also concerns the subsequent rape of the male

victim's niece the following day. Appellant was indicted on one count of aggravated robbery, two counts of aggravated rape, and one count of aggravated statutory rape. Appellant's trial began on July 1, 2013, and a jury convicted appellant as charged.

## I. Facts

The State's first witness was James Hall, a fifty-year-old man who managed utility, gas line, and pipeline crews. Mr. Hall testified that in the early morning hours of May 9, 2010, he was at his mother's house in Shelby County. He stated that he was going to take his mother to gamble at some casinos for Mother's Day. Mr. Hall went outside, sat in the passenger seat of the car, and "laid back." He felt someone pull his legs out of the car. Mr. Hall looked up and saw appellant, who demanded that Mr. Hall give him money. Appellant had a gun in his hand, and when Mr. Hall reached for the weapon, appellant quickly pulled the gun back, breaking Mr. Hall's finger. Another man was standing behind appellant, and appellant handed the gun to the second perpetrator while appellant searched Mr. Hall's person, discovering Mr. Hall's wallet in his back pocket. Appellant removed $1200 from Mr. Hall's wallet and took his cellular telephone. Mr. Hall explained that he could see appellant's face because the car's interior light was on when appellant leaned inside the car to search him. After the two men ran away, Mr. Hall went back into his mother's home to summon help. Mr. Hall's mother, step-father, and two nieces were inside the home. Mr. Hall called 9-1-1 and provided the responding officers with a statement. Mr. Hall testified that the following day, he went back to his mother's home and that Mr. Hall's cousins told him that he had been set up for the robbery by his niece, B.H.,[1] who had been inside his mother's house on the night of the robbery. Mr. Hall called the investigating detective to inform him of the new information. Mr. Hall identified appellant in photographic lineups on May 16 and 29, 2010, and identified him in the courtroom on the day of trial. Mr. Hall admitted that "it took [him] awhile" to identify appellant from the photographic lineup on May 16.

During cross-examination, Mr. Hall stated that during the incident, he could not see the second perpetrator clearly because the second man was standing at the back of the car on the passenger side.

B.H., Mr. Hall's niece, testified next that she was fourteen years old at the time of this incident, that she was born on May 23, 1995, and that she was staying with her grandmother while her mother was at work. B.H. admitted that she knew about the robbery before it occurred from overhearing two of her relatives talking about it but that she did not tell

---

[1] It is the policy of this court to refer to minors and victims of sexual offenses by their initials. In doing so, we mean no disrespect.

anyone. B.H. was inside her grandmother's home when her uncle was robbed. The day after the robbery, appellant, whom she identified as "Pooh-Pooh," told B.H. to come get her share of the money from the robbery. B.H. went to a nearby house where appellant was located and went into a back bedroom to retrieve her money. Appellant gave B.H. forty dollars, pushed B.H. on a bed facedown, told her to remain silent, held a gun to the back, right-hand side of B.H.'s neck, and vaginally penetrated her. B.H. explained that she could feel the gun on her neck and that the encounter lasted between five to ten minutes. B.H. explained that after the incident, she went home, showered, and cried. When asked if she had any injuries as a result of the sexual attack, B.H. responded, "No, sir, just throbbing inside." On May 14, 2010, B.H. told police officers about the robbery and identified appellant as one of the perpetrators. B.H. admitted that she was charged as an accessory after the fact and was prosecuted in juvenile court. On May 18, 2010, police officers came to her home and asked if she and appellant had previously had sex, and B.H. told the officers that she had been raped. B.H. asserted that she did not tell anyone about the rape prior to May 18 because she did not want to "keep on thinking about him and talking about him" and because she did not tell other people her secrets.

During cross-examination, B.H. stated that she had previously dated appellant's brother and that she had given appellant her cellular telephone number a couple of days prior to the robbery. B.H. asserted that the forty dollars that appellant gave her prior to their sexual encounter was to remain silent about the robbery and represented her proceeds from the robbery. B.H. denied that the money was for sex. B.H. stated that the two family members who told her about the robbery were Mr. Hall's daughter and the mother of one of her relatives. She stated that those two women set up the robbery and that the two women asked appellant to commit the robbery. B.H. stated that after she was adjudicated delinquent for being an accessory to the robbery, she was placed in a youth detention facility for nine months. During redirect examination, B.H. stated that appellant's younger brother was nineteen when she dated him.

Joseph Pearlman, a lieutenant with the Memphis Police Department, testified that on May 16, 2010, he interviewed appellant. At the interview, appellant waived his *Miranda* rights and, when providing his biographical information, stated that he was born on September 9, 1974. During the interview, appellant denied participating in the robbery but told the officers that he and B.H. had engaged in sexual relations in the past. However, appellant refused to give a written statement after he told the officers this information. During cross-examination, Lieutenant Pearlman agreed that appellant claimed that he did not know B.H.'s age when he had sex with her.

Juaquatta Harris, an officer with the Shelby County Sheriff's Department, testified that she was responsible for monitoring inmates' telephone calls. Through Officer Harris,

the State introduced recorded telephone calls that appellant had made while he was incarcerated.

A jury convicted appellant as charged—two counts of aggravated rape, one count of aggravated robbery, and one count of aggravated statutory rape. The trial court merged appellant's two aggravated rape convictions; therefore, appellant stands convicted of aggravated rape, aggravated robbery, and aggravated statutory rape. The trial court sentenced appellant to twenty-two years for the aggravated rape conviction, ten years for the aggravated robbery conviction, and seven years for the aggravated statutory rape conviction. The trial court ordered that all sentences be served concurrently for a total effective sentence of twenty-two years in confinement.

## II. Analysis

On appeal, appellant argues that the evidence at trial was insufficient to support his aggravated rape and aggravated robbery convictions. Appellant does not challenge his aggravated statutory rape conviction. The State argues that the evidence was sufficient to support appellant's convictions.

The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts

-4-

in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

## A. Aggravated Robbery

Appellant argues that there was insufficient evidence to support his aggravated robbery conviction. Appellant concedes that there was evidence supporting the conviction but challenges Mr. Hall's identification of appellant on the grounds that Mr. Hall did not know appellant, there was poor lighting during the robbery, and the time it took Mr. Hall to identify appellant from the photographic lineup. However, these are issues of credibility and fact that are resolved by the jury, which we will not re-weigh or re-evaluate on appeal. *Bland*, 958 S.W.2d 651 at 659.

To support a conviction for aggravated robbery, the State must prove beyond a reasonable doubt that appellant committed a robbery that was "[a]ccomplished with a deadly weapon . . . ." Tenn. Code Ann. § 39-13-402(a)(1). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." *Id.* § 39-13-401(a). Aggravated robbery is a Class B felony. *Id.* § 39-13-402(b).

There was sufficient evidence presented to prove that appellant committed aggravated robbery beyond a reasonable doubt. Mr. Hall explained that appellant pointed a gun at him and demanded that Mr. Hall give appellant money. Appellant handed the gun to the second perpetrator while appellant searched Mr. Hall's person, discovering Mr. Hall's wallet in his back pocket. Appellant removed $1200 from the wallet and took Mr. Hall's cellular telephone. Mr. Hall explained that he could see appellant's face during the incident because the car's interior light was on when appellant leaned inside the car to search him. The evidence was sufficient for a rational jury to determine that appellant robbed Mr. Hall at gunpoint. Appellant is without relief as to this issue.

## B. Aggravated Rape

Appellant also argues that the evidence was insufficient to prove that he used force or coercion to perpetrate the rape because the victim's testimony is "highly suspect" given

that she did not tell anyone about the incident until eight days later. Appellant also argues that there was insufficient evidence to prove that the victim suffered bodily injury.

To sustain a conviction for aggravated rape the State must prove beyond a reasonable doubt that appellant committed the "unlawful sexual penetration of a victim by the defendant . . . accompanied by any of the following circumstances: (1) Force or coercion is used to accomplish the act and the defendant is armed with a weapon or any article used or fashioned in a manner to lead the victim reasonably to believe it to be a weapon [or] (2) The defendant causes bodily injury to the victim . . . ." Tenn. Code Ann. § 39-13-502(a). Aggravated rape is a Class A felony. *Id.* § 39-13-502(b).

Although the convictions for aggravated rape merged, appellant can still challenge the sufficiency of the evidence supporting the separate convictions. *See State v. Jose Lemanuel Hall*, No. M2013-02090-CCA-R3-CD, 2014 WL 4384318, at *12 (Tenn. Crim. App. Sept. 5, 2014) (citation omitted); *State v. Jose L. Hidalgo*, No. M2011-01314-CCA-R3-CD, 2013 WL 1197726, at *8 (Tenn. Crim. App. March 26, 2013) (citing *State v. Jonathan Freeman*, No. W2011-02497-CCA-R3-CD, 2012 WL 5928359, at *3-4 (Tenn. Crim. App. Nov. 27, 2012); *State v. Adam Clyde Braseel*, No. M2009-00839-CCA-R3-CD, 2010 WL 3609247, at *8 (Tenn. Crim. App. Sept. 17, 2010)). Therefore, we address each merged conviction in turn.

First, in Count Two, regarding whether there was sufficient evidence to show that appellant used force or coercion to sexually penetrate B.H. while armed with a weapon, B.H. testified that appellant pushed her onto a bed facedown, told her to remain silent, held a gun to her neck, and penetrated her vagina. Appellant argues that B.H.'s testimony was "highly suspect" due to her not telling anyone about the encounter until eight days after the incident. However, questions involving the credibility of witnesses and the weight and value to be given the evidence are resolved by the jury as trier of fact, and we will not re-weigh or re-evaluate the evidence. *Bland*, 958 S.W.2d 651 at 659. There was sufficient evidence at trial for a reasonable jury to have determined that all the essential elements of the crime had been proven beyond a reasonable doubt.

Appellant also argues that in Count Three, there was no evidence at trial showing that B.H. suffered bodily injury. The State relies on *State v. Smith*, 891 S.W.2d 922 (Tenn. Crim. App. 1994), to argue that B.H.'s statement that she felt "throbbing inside" was sufficient to satisfy the bodily injury element of the crime. Bodily injury is defined as "a cut, abrasion, bruise, burn or disfigurement, and physical pain or temporary illness or impairment of the function of a bodily member, organ, or mental faculty." Tenn. Code Ann. § 39-11-106(a)(2). While it is true that it is not the duty of the court to apply size or degree measurements to types of cuts, abrasions, bruises or levels of physical pain, *see Smith*, 891 S.W.2d at 928, the

State must still present adequate evidence of bodily injury for a rational jury to determine beyond a reasonable doubt that the victim suffered bodily injury. The State failed to do so in this case. At trial, when B.H. was asked if she had any injuries as a result of the sexual attack, B.H. responded, "No, sir, just throbbing inside." There was no additional evidence presented or elicited by the State to prove bodily injury. Therefore, the only possible way to prove bodily injury would be to show that the statement "just throbbing inside" was sufficient to show that the victim suffered physical pain. *See* Tenn. Code Ann. § 39-11-106(a)(2). However, B.H. specifically answered "No" when asked if she suffered any injuries as a result of the attack. Furthermore, the State did not ask if the throbbing sensation was painful, if B.H. took any medication as a result, or even if B.H. ever felt pain during or after the encounter. B.H.'s solitary response that she did not suffer any injuries as a result of the incident and "just" felt "throbbing inside" fails to rise to the relatively low threshold of proving physical pain.

In contrast to the evidence presented at appellant's trial, the following cases are cases in which this court has determined that the victim suffered bodily injury due to physical pain. In *State v. Dorothy Denise Cross*, No. E2013-02133-CCA-R3-CD, 2014 WL 4748337 (Tenn. Crim. App. Sept. 25, 2014), the victim suffered from physical pain when the appellant hit the seven-month-pregnant victim in the arms and legs, pulled the victim's hair, and pushed the victim causing both the victim and appellant to fall down two steps on the porch, resulting in the victim having pain in her right leg, lower back, and hips. *Id.* at *5. In *State v. Charles Justin Woosley*, No. M2013-00578-CCA-R3-CD, 2013 WL 6188620 (Tenn. Crim. App. Nov. 26, 2013), the victim suffered physical pain when the victim had a scratch on her finger and had soreness in her shoulders and arms after the crime. *Id.* at *6. In *State v. Toomes*, 191 S.W.3d 122 (Tenn. Crim. App. 2005), this court determined that the victim suffered physical pain when she was raped, and the victim testified that "her lower organs 'kindly hurt' and that she 'just knew [she] burned and hurt down there' . . . ." *Id.* at 128. The victim's doctor also found "'bleeding [from the] lower edge of [her] vagina'" and "'[b]leeding from the lower edge of [her] frenulum.'" *Id.* In *State v. Terry Clark*, No. M2003-01925-CCA-R3-CD, 2004 WL 315141 (Tenn. Crim. App. Feb. 19, 2004), the victim suffered physical pain when he was kicked in the leg, and the victim testified that the injury "hurt at the time," even though the injury did not leave a bruise. *Id.* at *2. In *State v. Joseph Lee Bernell Bryant*, No. 01C01-9705-CR-00194, 1998 WL 301722 (Tenn. Crim. App. June 10, 1998), the victim suffered physical pain when appellant hit the victim's head on a wall, the victim blacked out temporarily, and the victim suffered from lower back pain and tenderness of the spine after the encounter. *Id.* at *5. In *State v. Harris*, 866 S.W.2d 583 (Tenn. Crim. App. 1992), this court determined that the victim suffered physical pain and bruising when she testified that the actual penetration during the rape was very painful, she had a small bruise on her hip from hitting the corner of a table during the incident, and she had tenderness in her pelvic area after the encounter. *Id.* at 587-88. Finally, even in the case that the State cites for

support, *State v. Smith*, this court found that the victim suffered physical pain both in her chest when appellant put his entire body weight on her chest *and* when appellant penetrated her vagina. *Smith*, 891 S.W.2d at 928. A nurse practitioner who examined the victim explained that the victim suffered from soreness in her chest and had redness inside her vagina with a small amount of blood. *Id.* In each of these cases, there was more evidence presented to show physical pain than a simple statement that the victim felt "throbbing inside," whether that was through the victim's indicating feeling pain or a pain level or through medical testimony. Because there was no such evidence presented at trial in this case, the evidence was insufficient to prove that the victim suffered bodily injury; therefore, the evidence was insufficient to support the aggravating factor for appellant's aggravated rape conviction in Count Three.

As a result, we now reduce appellant's aggravated rape conviction in Count Three to a rape conviction. *See State v. Lamar Ross*, No. W2003-02823-CCA-R3-CD, 2004 WL 2715348, at *7 (Tenn. Crim. App. Nov. 22, 2004) (reducing an aggravated rape conviction to rape when the indictment only alleged rape rather than aggravated rape); *State v. Tutton*, 875 S.W.2d 295, 298 (Tenn. Crim. App. 1993) (reducing an aggravated rape conviction to rape when there was insufficient evidence to prove the aggravating circumstance). However, because the trial court merged appellant's aggravated rape convictions in Counts Two and Three and because there was sufficient evidence to support the aggravated rape conviction in Count Two, this modification does not affect appellant's standing conviction for aggravated rape. "In the circumstance, in which two guilty verdicts are returned as to alternative charges, the guilty verdict on the greater charge stands and the guilty verdict on the lesser charge merges into the greater charge." *State v. Banes*, 874 S.W.2d 73, 81 (Tenn. Crim. App.1993) (citing *State v. Davis*, 613 S.W.2d 218 (Tenn.1981)); *see Lamar Ross*, 2004 WL 2715348, at *7 (citation omitted). "The judge should enter a judgment of conviction on the greater offense and a judgment merging the lesser offense into the greater." *Banes*, 874 S.W.2d at 81. Therefore, the Count Three rape conviction merges into the Count Two aggravated rape conviction. However, because the trial court did not sentence appellant on the Count Two aggravated rape conviction and only sentenced appellant on the Count Three conviction, which we now reduce to a lesser offense, we remand this case to the trial court for a new sentencing hearing regarding the merged offenses for aggravated rape in Count Two.

## CONCLUSION

Based on the foregoing analysis, we affirm the trial court's judgments as modified and remand to the trial court for a new sentencing hearing consistent with this opinion.

_____
ROGER A. PAGE, JUDGE