# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs November 7, 2006

## STATE OF TENNESSEE v. ALTON TAPPAN

**Appeal from the Criminal Court for Shelby County**
**No. 05-01325    Paula Skahan, Judge**

---

**No. W2006-00168-CCA-R3-CD - Filed May 29, 2007**

---

A Shelby County jury convicted the defendant, Alton Tappan, of aggravated burglary and theft of property valued at $1,000 or more but less than $10,000. The trial court imposed an effective incarcerative sentence of 14 years. On appeal, the defendant challenges the sufficiency of the convicting evidence and complains that his sentence is excessive because the State failed to prove an offender range above Range I. Our review assures us that the evidence is sufficient and that the defendant was properly sentenced. We therefore affirm the convictions and sentence.

**Tenn. R. App. P. 3; Judgments of the Criminal Court are Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which JERRY L. SMITH and ROBERT W. WEDEMEYER, JJ., joined.

C. Anne Tipton, Memphis, Tennessee, for the Appellant, Alton Tappan.

Robert E. Cooper, Jr., Attorney General & Reporter; Brent C. Cherry, Assistant Attorney General; William L. Gibbons, District Attorney General; and Chris West, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

Viewed in the light most favorable to the State, the evidence at trial established that on the morning of October 3, 2004, Elizabeth Young parked her 2000 Ford Taurus on the street across from her church, located at Park and Marechalneil in Orange Mound, and attended Communion services. When she left the church at approximately 1:45 p.m. to return home, she discovered that her vehicle was missing. She contacted local law enforcement officers and reported the theft. A few days later, Ms. Young was watching television and recognized her vehicle on a local evening news broadcast. She later identified and retrieved her vehicle from the police impoundment lot.

At trial Ms. Young identified a photograph of her car, although she said that the wheels were different. The car shown in the photograph had a distinctive license plate, "Z by B," which Ms. Young explained meant "Zeta by Beta," her sorority. Ms. Young testified that her stolen vehicle was "in pretty good shape" and had been driven approximately 21,000 miles prior to the theft. She purchased the automobile in 2000 for $23,000. Ms. Young estimated that the value of the vehicle as of the date it was stolen was "probably between nine and [$]10,000."

Larry Gafford, who lived at 3524 Marianne in a duplex family residence, testified that on October 5, he awoke at approximately 9:50 a.m. because someone was "aggressive[ly] knocking" on his door. He looked out a window, and because he did not recognize the vehicle in the driveway, he did not answer the door. He testified that the vehicle was a dark blue Ford Taurus, and he identified a photograph of the vehicle taken outside his residence.

Mr. Gafford testified that he laid down on his couch, and at that point he heard "another noise knocking on the next-door neighbor's door." He looked through his front-door window and saw two men "prying open the iron door and kick[ing] in the wooden door" to the neighbor's residence. Mr. Gafford described one of the men as shorter than six feet tall, weighing 135 to 140 pounds, black, and wearing a white shirt and tennis shoes. The other man was approximately six feet and three inches tall, weighing over 200 pounds, black, and wearing dark colored clothing, "[b]luish gray."

Mr. Gafford testified that he retrieved his pistol and called the police department. Over the telephone, Mr. Gafford gave "an exact description as [the intruders] were going in and out" of the neighbor's residence carrying electronic equipment and a jewelry box. Mr. Gafford remained on the telephone until the police officers arrived.

When the officers arrived, one of the intruders was coming out of the house, and the other man was setting a stolen item at the vehicle. When the intruders saw the officers, they "eluded to the side and went through the back door or through the side of the house" and escaped through "the backyard." In addition to the officers' personal observations, Mr. Gafford also supplied the responding officers "a full description of what [the intruders] were wearing, their size, their activities, [and] exactly what they were doing." Mr. Gafford saw the men again approximately 45 minutes later after the officers located and detained them. The officers brought the intruders separately to Mr. Gafford to see if he could identify them. Mr. Gafford testified that he identified the men as "the two guys that [he] saw actually break into the house 3 feet away from [his] face."

Mr. Gafford admitted that when he testified at the defendant's preliminary hearing, he did not identify the defendant or the other intruder. He explained at trial, "Because instead of myself making a mistake at the time I would of rather used the testimony that I gave earlier to the police officers, to the detectives, to the 911 operator. If you put all of these together and you put exactly what I say what they were wearing, it should match up directly to their booking sheet." Mr. Gafford did, however, identify the defendant at trial.

On cross-examination, Mr. Gafford stated that he had worked four hours on the night of October 4 at Young Avenue Sound Studio. He went home shortly after midnight and fell asleep on his couch. Mr Gafford denied having consumed any alcohol or narcotics that evening.

When asked on cross-examination to name the color of the intruders' eyes, Mr. Gafford replied that "[f]or the most part" he just saw the backs of their heads and the sides of their faces. Mr. Gafford said that he remained inside his residence until the police officers arrived and the intruders fled. He then walked outside and spoke with one of the officers. According to Mr. Gafford, the police officers captured one of the intruders "fairly quickly off the bat within like the first three or four minutes." The officers captured the second intruder approximately 45 minutes later. The officers drove the intruders separately to the break-in site, and Mr. Gafford testified that he identified each suspect by the clothing they were wearing.

Defense counsel challenged Mr. Gafford's in-court identification of the defendant, particularly because Mr. Gafford failed to identify the defendant at the preliminary hearing. Counsel alleged that Mr. Gafford "identified this man because he's a male black," to which Mr. Gafford replied, "No. I identified that gentleman there as the guy that did the break into the house."

Adriana Morales, who lived with her daughter at the burglarized residence, testified that on the morning of October 5, 2004, she took her daughter to a doctor's appointment. She returned to the residence and "saw a lot of police cars in the street." She spoke with the officers, learned what had happened, and went to the police station to give a statement. At trial, she identified numerous photographs depicting the damage to her residence and items of personal property, such as a television and stereo equipment that had been moved to her porch and stereo speakers inside the trunk of an unknown blue vehicle parked in her driveway.

Memphis Police Officer Shan Hicks testified that he responded to a call reporting a "prowler" at 3526 Marianne. He saw two individuals on the front porch carrying electronic equipment and a jewelry box. One of the individuals was dressed in a blue suede jogging suit, and the officer recalled that the other man was wearing a white tee shirt. At trial, the officer identified the defendant as one of the men on the porch.

As Officer Hicks got out of his police vehicle, the men ran "towards the back of the house." Officer Hicks pursued, but he lost sight of the intruders when he reached the backyard, at which point he broadcast on his radio a description of the intruders. Officer Hicks returned to the front of the residence and observed the blue vehicle in the driveway and numerous items of personal property inside the vehicle. From its license plate, the officer identified the registered owner of the vehicle and determined that the vehicle was stolen. At trial, the officer could not recall the name of the vehicle's owner.

Officer Hicks identified photographs of the residence's interior, the "kicked-in" front door, and items on the front porch. The officer recalled that the items on the porch shown in one of the photographs had been removed from the backseat of the blue Taurus after crime scene officers

had processed the area. Officer Hicks testified that other officers in the area apprehended two men and transported them to the scene where Officer Hicks identified them as the intruders he had seen.

On cross-examination, Officer Hicks estimated that he was able to observe the intruders for 10 to 15 seconds. He also estimated that he saw their faces "briefly for a second before they ran off." He testified that the men captured and returned to the scene had dark colored eyes. The man in the jogging suit was wearing a hat, and the other man had a "fade cut." The officer testified that he could not tell if the men had any scars or gold teeth. Officer Hicks affirmed that the second suspect who was in custody and transported to the scene 30 to 40 minutes later had been stopped behind a Papa John's pizza parlor located only one or two blocks from Ms. Morales's residence.

The defense presented testimony from one witness, Officer Alvin Davis, who arrested the defendant "in front of the Papa John's" in the "700 block of South Highland" at 11:08 a.m. The officer testified that the arrest site is the "next street over" from 3526 Marianne. When the officer saw the defendant, the defendant was "walking across the street from another residen[ce], like right across from the pizza place . . . carrying a pizza box walking toward the Papa John's."

On cross-examination, Officer Davis explained that he arrested the defendant because he matched the description of one of the men who had burglarized a residence in the area and because the defendant appeared suspicious walking with a pizza box toward, not away from, the pizza parlor.

Based upon the evidence presented the jury found the defendant guilty of the charged offenses of aggravated burglary of Ms. Morales's residence and theft of Ms. Young's vehicle, valued at $1,000 but less than $10,000. For his aggravated burglary conviction, the trial court sentenced the defendant as a persistent offender to 14 years in the Department of Correction; for his theft conviction, the trial court sentenced the defendant as a career offender to 12 years in the Department of Correction. The court ordered the sentences to be served concurrently with each other but consecutively to a sentence in another case.

The defendant filed a timely appeal. He challenges the sufficiency of the convicting evidence and attacks the sentencing procedure followed in his case. We will discuss each issue in turn.

## SUFFICIENCY OF THE EVIDENCE

The defendant pursues a two-prong attack on the sufficiency of the convicting evidence. He argues that the State failed to establish a legally sufficient basis that the value of Ms. Young's stolen vehicle was greater than $1,000. Regarding the aggravated burglary conviction, the defendant maintains that the witnesses' generalized identifications, based upon clothing, race, and gender, were unreliable and insufficient to prove his guilt. As we shall explain, we disagree and affirm the defendant's convictions.

-4-

The standard for an appellate court when reviewing a challenge to the sufficiency of the evidence is "whether, considering the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002); *see also* Tenn. R. App. P. 13(e); *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2791-92 (1979); *State v. Hall*, 8 S.W.3d 593, 599 (Tenn. 1999). Because a verdict of guilt removes the presumption of innocence and imposes a presumption of guilt, the burden shifts to the defendant upon conviction to show why the evidence is insufficient to support the verdict. *See State v. Evans*, 108 S.W.3d 231, 237 (Tenn. 2003); *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000); *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). On appeal, the State is entitled to the strongest legitimate view of the evidence and to all reasonable and legitimate inferences that may be drawn therefrom. *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000); *see also Carruthers*, 35 S.W.3d at 558; *Hall*, 8 S.W.3d at 599.

A verdict of guilt by the trier of fact resolves all conflicts in the evidence in favor of the prosecution's theory. *See State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). "Questions about the credibility of witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact, and this Court does not re-weigh or re-evaluate the evidence." *Evans*, 108 S.W.3d at 236 (citing *Bland*, 958 S.W.2d at 659). Nor may this court substitute its own inferences drawn from circumstantial evidence for those drawn by the trier of fact. *Id*. at 236-37.

## A. Theft

"A person commits theft of property if, with intent to deprive the owner of property, the person knowingly obtains or exercises control over the property without the owner's effective consent." T.C.A. § 39-14-103 (2003). If the value of the property is $1,000 or more but less than $10,000, the theft is a Class D felony. *Id*. § 39-14-105(3). Code Section 39-11-106(a)(36) defines "value" in the following fashion:

> (i) The fair market value of the property or service at the time and place of the offense; or

> (ii) If the fair market value of the property cannot be ascertained, the cost of replacing the property within a reasonable time after the offense;

> . . . .

> (C) If the property or service has a value that cannot be ascertained by the criteria set forth in subdivisions (a)(36)(A) and (B), the property or service is deemed to have a value of less than fifty dollars ($50.00).

*Id*. § 39-11-106(a)(36)(A)(i), (ii), (C).  It is up to the jury to determine the fair market value of the items stolen.  *State v. Hamm*, 611 S.W.2d 826, 828-29 (Tenn. 1981).

Tennessee Rule of Evidence 701(b) permits the owner of personal property to testify about the value of that property.  Tenn. R. Evid. 701(b) ("A witness may testify to the value of the witness's own property or services."); *Reaves v. State*, 523 S.W.2d 218, 220 (Tenn. Crim. App. 1975).  He or she can testify about either the fair market value at the time of the offense or the replacement cost.  *State v. Gene Allan Logue*, No. W1999-01795-CCA-R3-CD, slip op. at 3 (Tenn. Crim. App., Jackson, Dec. 15, 2000).

Here, Ms. Young testified that her stolen vehicle was "in pretty good shape" and had been driven approximately 21, 000 miles.  She purchased the automobile in 2000 for $23,000 and had "kept up with the maintenance and all."  Ms. Young estimated that the value of the vehicle as of the date it was stolen was "probably between nine and [$]10,000."  Based on her testimony, the evidence was sufficient for the jury to determine that the value of her vehicle was more than $1,000.  *See Gene Allan Logue*, slip op. at 3 (given information presented concerning original purchase price, the original condition of the property, and the length of ownership, the evidence was sufficient for the jury to determine that value of the stolen property was more than five hundred dollars but less than one thousand dollars).

The defendant likens Ms. Young's testimony to the victim's testimony about the value of stolen coins in *State v. Robert Nix*, No. 136, slip op. at 3 (Tenn. Crim. App., Knoxville, Sept. 6, 1991).  However, *Robert Nix* is readily distinguishable from the present appeal.  The victim in *Robert Nix* initially guessed at the face value of some coins that were stolen and later admitted to not knowing the value of the coins at all.  *Id*.  Ms. Young's opinion is hardly classified as pure speculation or conjecture.  She explained to the jury that she based her opinion on the price that she paid for the vehicle in 2000 and taking into consideration that when stolen in 2004, the vehicle was in good condition and had only been driven approximately 21,000 miles.  Her explanation had sufficient details to permit the jury to decide whether her estimated value was appropriate.  This evidence, we hold, was legally sufficient to establish that the value of the stolen vehicle was $1,000 or more but less than $10,000.

### B.  Aggravated Burglary

The crime of aggravated burglary is committed when a person (1) without the effective consent of the property owner (2) enters a habitation or remains concealed in such habitation, and (3) has the intent to commit a felony, theft or assault, or does commit or attempt to commit a felony, theft or assault.  T.C.A. §§ 39-14-402, -403 (2006).  The defendant acknowledges that two witnesses, Mr. Gafford and Officer Hicks, provided identification testimony at trial, and both men made in-court identifications of the defendant.  Nevertheless, the defendant insists that these identifications were "suspect and highly unreliable" such that the State failed to prove his identity as the perpetrator of the aggravated burglary.

-6-

As recounted earlier, Mr. Gafford testified that he watched the defendant "from the side perfectly in full form, rip open the door off the thing which is actually 3 feet in front of [his] front door." Officer Hicks testified at trial that he saw the defendant and the accomplice before the men fled the scene. He estimated that he had his eyes on both men "ten maybe 10, 15 seconds." The identity of the defendant was a question of fact for the jury. *State v. Phillips*, 728 S.W.2d 21, 25 (Tenn. Crim. App. 1986). The defendant registers no complaint about the accuracy of the jury instruction regarding identity. The jury could reasonably infer from the evidence that the defendant was one of the men who broke into Ms. Morales's apartment. This court is not at liberty to reevaluate that assessment, and we hold that the evidence was legally sufficient to support the defendant's conviction for aggravated burglary.

## SENTENCING

At the sentencing hearing in the present case, the defense conceded that for purposes of the aggravated burglary conviction, a class C felony, the defendant qualified as a Range III, persistent offender, *see* T.C.A. § 40-35-107(a)(1) (2006) (persistent offender is a defendant who has received "[a]ny combination of five (5) or more prior felony convictions within the conviction class or higher, or within the next two (2) lower felony classes"), and that for purposes of the Class D theft conviction, the defendant qualified as a career offender, *see id.* § 40-35-108(a)(3) (career offender is a defendant who has received "[a]t least six (6) prior felony convictions of any classification if the defendant's conviction offense is a Class D or E felony"). Accordingly, the sentencing range for the aggravated burglary was 10 to 15 years, and the sentence for the theft was statutorily set at 12 years. *See id.* §§ 40-35-108(c), -112(c)(3). Having so conceded, the defendant nevertheless insisted at sentencing that he must be sentenced as a Range I offender because the State had not provided the court with any certified judgments to establish the prior convictions.

The trial court adjourned and continued the sentencing hearing to allow time for the State to obtain certified copies of the defendant's judgment sheets. The State obtained the necessary records and presented them to the court when the hearing resumed. Those records established 10 prior felony convictions that are Class B, D, or E felonies, which substantiated that the defendant was a persistent offender for the aggravated burglary conviction and a career offender for the theft conviction. The trial court imposed the statutorily required sentence of 12 years for the theft conviction, and it sentenced the defendant to 14 years for the aggravated burglary conviction. The trial court ordered that the sentences be served concurrently to each other but consecutively to an earlier sentence for which probation was revoked.

From the defendant's brief on appeal, it is not entirely clear whether he is arguing that the State's notice of intent to seek enhanced punishment, *see* T.C.A. § 40-35-202(a) (2006), was defective because it did not include any certified judgments or that the court erred in continuing the sentencing hearing to allow the State to obtain certified judgments. In either event, we discern no basis to disturb the trial court's sentencing determination.

The statutory notice of intent to seek enhanced sentencing is intended to "(a) provide fair notice to an accused that he/she is exposed to other than standard sentencing, (b) to facilitate plea bargaining, (c) to enable the accused to make an informed decision before entering a guilty plea, and (d) to a certain extent, to aid in trial strategy." *State v. Livingston*, 197 S.W.3d 710, 712 (Tenn. 2006). There is no evidence in the present case that the purpose of the notice requirement was somehow thwarted.

Regarding the contents of the notice, Code section 40-35-202 "requires, at a minimum, that the State file: (1) written notice, (2) clearly expressing the State's intention to seek sentencing outside of the standard offender range, (3) setting forth the nature of the prior felony conviction, the dates of the convictions, and the identity of the courts of the convictions." *Livingston*, 197 S.W.3d at 713-14 (footnote omitted); *see* T.C.A. § 40-35-202(a) (2006). The State's notice in the record before us complies with these requirements, and the notice is not defective because certified copies of the judgments of conviction are not attached thereto.

Moreover, we discern nothing improper about the trial court's continuing the sentencing hearing, and certainly the defendant has shown no prejudice. The presentence report is considered to be reliable hearsay, making it unnecessary in most instances to introduce certified copies of convictions. See *State v. Adams*, 45 S.W.3d 46, 59 (Tenn. Crim. App. 2000). The trial court could have sentenced the defendant as a persistent and career offender based on the presentence investigation report and was not required to impose Range I sentences in the absence of certified copies of the judgments.

Based on the foregoing, we affirm the defendant's convictions and sentencing.

_____
JAMES CURWOOD WITT, JR., JUDGE