STATE of Tennessee, Appellee,

v.

Albert G. PHILLIPS, Eddie Dean Phillips, and Charles Alvin Phillips, Appellants.

Court of Criminal Appeals of Tennessee, at Knoxville.

Nov. 4, 1986.

Permission to Appeal Denied by Supreme Court Feb. 2, 1987.

Billy P. Sams, Dorothy B. Stulberg, Thomas N. DePersio, Oak Ridge, for appellants.

W.J. Michael Cody, Atty. Gen. & Reporter, Gordon W. Smith, Asst. Atty. Gen., Nashville, Janice Hicks, Clinton, for appellee.

## OPINION

DWYER, Judge.

Appellants, Albert G. Phillips, Eddie Dean Phillips, and Charles Alvin Phillips, are brothers who stand convicted of murder in the first degree, for which each was sentenced to life imprisonment. They appeal as a matter of right, raising a multiplicity of issues. All issues are raised by each of the appellants, except as indicated otherwise, parenthetically.

> Whether the evidence was sufficient to sustain the jury's guilty verdict; and

> Whether there was credible evidence to establish that the victim was killed with premeditation.

On appeal, a guilty verdict should be set aside only if the evidence is insufficient to support the finding of guilt by the trier of fact. Tenn.R.App.P. 13(e); *State v. Johnson*, 692 S.W.2d 412, 413 (Tenn.1985). The standard of appellate review for sufficiency of the evidence requires the determination of whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. Richardson*, 697 S.W.2d 594, 595 (Tenn. Crim.App.1985); *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979).

A guilty verdict removes the presumption of innocence and raises a presumption of guilt upon appeal. *State v. Grace*, 493 S.W.2d 474, 476 (Tenn.1973); *Anglin v. State*, 553 S.W.2d 616, 620 (Tenn.Crim.App. 1977); *Williams v. State*, 552 S.W.2d 772, 776 (Tenn.Crim.App.1977). The State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. *State v. Cabbage*, 571 S.W.2d 832, 836 (Tenn.1978). In that light, the evidence will be reviewed in order to evaluate the sufficiency of the evidence issue raised by all three appellants.

In the case *sub judice*, Gayle Andrews testified that she was the 12½ year-old girlfriend of Eddie Phillips in July 1980, when one afternoon she, Eddie, Albert and Charles Phillips went riding around Oak Ridge. They stopped at a liquor store where they encountered the victim, Jack Kegu, who went riding with them. Appellants and Kegu were all drinking heavily, and their mood appeared jovial.

Eddie drove the party along backroads to a remote location called Frost Bottom Pull-off, a common stop-off place used frequently by the local inhabitants. Eddie instructed the witness to remain in the car, while the men disappeared down an embankment at Eddie's urging. The witness stayed in the car listening to the radio for approximately 30 minutes to an hour, until the appellants returned without Kegu. When the witness inquired as to Kegu's whereabouts Eddie replied, "If you don't hush I'll do to you the same way I did Jack." The witness further testified that the four drove back to the liquor store where they had encountered Kegu. Charles and Albert alighted from the automobile. Eddie and the witness then proceeded to Eddie's house where, according to the witness, he "acted like he was in another world." The next day Eddie drove the witness back to Frost Bottom Pull-off and admitted to her that he killed Kegu. He also admitted taking the victim's liquor and money.

Shirley Phillips was Eddie's estranged wife at the time of the offense. She testified for the State that prior to her marriage to Eddie she had a relationship with the victim. She further testified that on one occasion after her marriage, Eddie took her to Kegu's apartment and attempted to provoke a confrontation with him. Shirley Phillips also stated that in July 1980, Eddie gave her $50.00. She recalled this because the appellant had never before given her any money.

A resident of Frost Bottom Road testified that in August 1980, one of her sons found a human jaw bone with teeth near their home. She notified Anderson County officials who, two weeks later, located more human bones. Still later, the witness

found in her yard a dirty shirt with a bone in it.

Jack Kegu's car was reported abandoned in an Oak Ridge shopping center parking lot on September 2, 1980. Witnesses testified that the vehicle had been there for a period of six weeks to two months.

In December 1980, hunters in the Frost Bottom area found a pair of belted pants with bones in the legs, some bones scattered nearby, and an empty change purse. Dr. William Bass, a forensic anthropologist, found a major portion of the skeleton including the skull at this scene. From his examination of these remains, Dr. Bass concluded that the victim had been shot in the head twice, first from behind and then in the right side. He determined that the victim had been dead between two months and one year. From a comparison of hospital X-rays made of Jack Kegu, Dr. Bass concluded that the remains were those of Kegu.

The appellants did not testify, but offered proof as to the credibility of two of the State's witnesses. A sister-in-law testified that the investigating officer promised her that he would help her get custody of her children in exchange for her testimony against the appellants. A friend of appellant Eddie Phillips testified casting reflections on the testimony of Gayle Andrews.

■ From the evidence, the jury could and did reasonably conclude that Eddie Phillips was guilty of murder in the first degree, and that Albert and Charles were guilty as aiders and abettors. We cannot agree with the appellants' contention that the State's prosecution for first degree murder failed to establish the requisite premeditation. Premeditation is a question of fact to be determined by the jury from all circumstances of the killing. *Houston v. State,* 593 S.W.2d 267, 273 (Tenn.1980); *State v. LaChance,* 524 S.W.2d 933, 937 (Tenn.1975). A circumstance from which the inference of premeditation may be drawn is repeated shots or blows inflicted upon the victim. *See Houston, supra,* citing *State v. Bullington,* 532 S.W.2d 556 (Tenn.1976); *Franks v. State,* 187 Tenn. 174, 213 S.W.2d 105 (1948). Our Supreme

Court has ruled, more specifically, that premeditation may be shown by multiple shots to the victim's skull and the fact that he was shot from behind. *State v. Caldwell,* 671 S.W.2d 459 (Tenn.1984). Likewise, appellants' contention that they were intoxicated, hence no premeditation could have been formulated, was a matter for the jury. By their verdict this theory obviously was discredited.

We also are not in accord with the reasoning of Albert and Charles in their urging that no proof other than presence was established, therefore the evidence was insufficient to support their conviction as aiders and abettors. The evidence shows that all three brothers were on the town drinking together, that they met the decedent, they rode in the car together down back roads to Frost Bottom Pull-off where Eddie said, "Let's go for a walk." The three brothers accompanied decedent into the woods, from which Kegu never returned. It is unarguable that a jury could and did infer by their presence that they encouraged Eddie or stood ready to assist in the commission of this crime. T.C.A. § 39-1-303. From the proven circumstances a question of fact was presented to the jury, from which they determined that Albert and Charles were aiding and abetting, 22 C.J.S. § 88(2), p. 266, in this homicide.

Such proof was sufficient to support appellants' conviction. We cannot say on review that this evidence preponderates against their guilt and in favor of their innocence. In short, appellants have failed to carry the burden of proof on review as required by T.R.A.P. 13(e). The issue is overruled.

Whether the trial court erred in denying the defendants' request for an investigator or ballistics expert both before and after trial.

■ Appellants contend that the trial court erred in denying a motion for an investigator or ballistics expert before and after trial pursuant to T.C.A. § 40-14-207(b). With Albert and Charles not alleging this issue in their motion for new trial it is waived. *State v. Durham,* 614 S.W.2d 815, 816 (Tenn.Crim.App.1981). Further-

more, with the State not seeking the death penalty, the trial court was without statutory authority to grant the motion. Since there was no threshold showing that denial of a ballistics expert for the defense denied appellants of any due process, this issue is overruled. *State v. Goodman*, 643 S.W.2d 375, 379 (Tenn.Crim.App.1982).

Whether the trial court erred in failing to permit a challenge to a juror.

After the jury had been accepted by both sides, but before it was sworn, one of the defense attorneys asked the court for further voir dire of a juror who had not responded to an earlier question concerning friendship with "any police or officers or anybody that is in law enforcement."

The subject juror was questioned outside the presence of the other jurors, and indicated that she knew the Anderson County Sheriff only in an official capacity. The defendants asked to excuse the juror for cause or allow a peremptory challenge. The court denied the challenge for cause, finding nothing that suggested the juror's ability to impartially decide this case. The court also denied a peremptory challenge of the juror because the attorneys had accepted the jury.

■ The trial court did not err in denying a challenge for cause because familiarity of a juror with people connected to law enforcement does not establish a prima facie case of bias or partiality. Nor does the record show any actual favor or partiality by the juror. *State v. Taylor*, 669 S.W.2d 694, 699–700 (Tenn.Crim.App.1983).

■ Under Rule 24(c), Tennessee Rules of Criminal Procedure, the exercise of peremptory challenges ceases when a full jury has been selected and accepted by counsel. In the case at hand, the jury had been selected and accepted by counsel for both sides. This issue, therefore, is without merit.

Whether the trial court erred in instructing the jury on felony murder; and

Whether the trial court erred in failing to grant a continuance after the State announced that it was proceeding on the theory of felony murder, as well as murder in common law form (Albert Phillips).

On the day before trial, the State requested that the trial judge instruct the jury on felony murder. Appellants contend that the evidence did not warrant such instruction, and that the trial court erred in denying their request for a continuance on the ground that they had not been notified of the State's intention to rely on felony murder. With this we cannot agree.

■ Evidence existed—absence of money in the clothing of decedent, an empty change purse found at the scene, and Eddie's statement, "All that I got was money and liquor."—which raised the theory of murder in the perpetration of a felony (larceny)—a charge included in the first degree murder common-law form indictment. The trial judge has a duty to give a complete charge of the law applicable to the facts of the case, therefore there was no error in giving this instruction. *State v. Thompson*, 519 S.W.2d 789, 792 (Tenn.1975).

■ As to appellant, Albert Phillips' motion for a continuance, such matters are within the discretion of the trial court. With felony murder being included in a murder first degree indictment charged in common-law form the State's request could not have caused Albert any prejudice. In another light, no prejudice has been shown. We find no abuse of discretion and no prejudice to appellant; consequently, these issues are without merit.

Whether the trial court erred in failing to require a courtroom identification of the defendants.

■ The identity of the defendants is a question of fact solely for the jury. *State v. Crawford*, 635 S.W.2d 704, 705 (Tenn. Crim.App.1982). From the testimony of the witness Gayle Andrews where she referred to all appellants by name, appellants' identity could be reasonably determined or inferred by the jury. There is no error here, thus this issue is overruled.

Whether the trial court erred in sustaining the State's objection to evidence as to earlier police investigations.

■ The defendant's cross examination of a police investigator attempted to show a lack of diligence by the officer and others in investigating this case. The State's objection to this line of questioning was sustained. The appellants attempted to question the officer as to statements of third persons regarding threats made upon Kegu by other people, and decedent's reputation. These, of course, called for hearsay answers.

The State further contends that these matters were irrelevant to any material issue of fact before the court. *See State v. Banks*, 564 S.W.2d 947, 949 (Tenn.1978). With this we agree; appellant's issue is without merit.

Whether the trial court erred and admitted an X-ray of the victim in violation of the Uniform Business Records Act, thus denying appellant of his right to confrontation. (Charles Phillips)

■ Appellant contends that his confrontation rights were violated when X-rays taken at a Wisconsin hospital were admitted at trial by an official other than the person who took them. In order to satisfy the Sixth Amendment, the following criteria must be met:

(1) The evidence must not be "crucial" or devastating";

(2) The State must make a good faith effort to secure the presence of the person whose statement is to be offered against the defendant; and

(3) The evidence offered under a hearsay exception must bear its own indicia of reliability.

*State v. Henderson*, 554 S.W.2d 117, 119, 120 (Tenn.1977).

■ In the case at hand, the X-ray in question was not "crucial" or "devastating," since there was testimony, circumstantial evidence and other X-rays taken at a local hospital which supported the identity of the victim. Secondly, the record shows that the State was unable in good faith to produce the preparer of the X-ray, who is deceased. Thirdly, the evidence was properly admitted under the Uniform Business Records as Evidence Act, T.C.A. § 24–7–111, as a recognized exception to the hearsay rule.

The X-ray was offered by the Director of Medical Records at Columbia Hospital, the custodian, who identified it and testified that it was kept in the ordinary cause of business and incidental to the regular business operations of the hospital. Such a hospital record bears its own indicia of reliability. *State v. Henderson, supra*, at 120. Thus, appellant's right to confrontation was not infringed.

Even if the appellant's confrontation right is found to have been violated, for the above reasons, the error was harmless. *See State v. Fears*, 659 S.W.2d 370, 378 (Tenn.Crim.App.1983). Accordingly, this issue is overruled.

Whether the trial court erred in failing to dismiss the indictment; and

Whether the trial court improperly denied a preliminary hearing (Eddie and Albert Phillips)

Appellants contend that the trial court erred in failing to dismiss the indictment because:

(1) The five-year delay between the crime and appellant's arrest prejudiced their defense, and

(2) Appellants were improperly denied a preliminary hearing.

■ As to the first argument, this issue is waived pursuant to Rule 12(b), (f), Tennessee Rules of Criminal Procedure, because the record contains no pre-trial motion to dismiss the indictment on this ground. Furthermore, the prosecution of this case was within the statute of limitations, T.C.A. § 40–2–101(a). Since appellants do not allege a violation of their speedy trial rights after arrest, we are aware of no authority to support their contention.

■ As to the second argument, the record contains no transcript of a hearing on this matter, merely the pleadings of counsel which are not evidence. Additionally, there was no ruling of the trial court thereon. In any event, the instant prosecu-

tion was initiated by a valid indictment.[1] Consequently, appellants were not entitled to a preliminary hearing. *State v. Martin*, 634 S.W.2d 639, 643 (Tenn.Crim.App.1982). These issues therefore are without merit.

Whether the trial court erred in allowing testimony of appellant's wife. (Eddie Phillips)

▇▇▇▇ Appellant contends testimony by his wife regarding an occasion at Frost Bottom when appellant was "hitting on her" should not have been allowed. This issue lacks merit for several reasons. First, since no contemporaneous objection was made to this testimony, the issue has been waived. *Mullins v. State*, 571 S.W.2d 852, 857 (Tenn.Crim.App.1978). Secondly, the issue was not preserved in appellant's motion for a new trial, therefore, the issue has been waived. *State v. Durham*, 614 S.W.2d 815, 816 (Tenn.Crim.App.1981). Thirdly, the marital privilege does not attach to crimes committed by one spouse upon the other. *Royston v. State*, 1 Tenn. Cr.App. 748, 450 S.W.2d 39 (1969).

Whether the trial court erred in instructing the jury on confessions. (Charles Phillips)

Appellant contends that Eddie Phillips' statement to Gayle Andrews that he killed Kegu was an admission, not a confession. Consequently, the appellant contends that the evidence did not justify the trial court's jury instruction on confession.

The State argues that a confession is "an admission or acknowledgement that the accused committed the crime with which he is charged." *Collins v. State*, 169 Tenn. 393, 88 S.W.2d 452 (1935). This court acknowledges that these terms are similar in that both are statements of guilt. However, by definition a confession includes an element not present in an admission (i.e., the pre-existence of a charge or charges against the statement's author).[2] Even if we were to conclude that the judge's jury instruction

amounted to error, it was harmless. T.R. A.P. 36(b). This issue is overruled.

All issues raised by the appellants are without merit. Accordingly, the judgment of the trial court is affirmed.

WALKER, P.J., and SCOTT, J., concur.

---

1. An original prosecution of the appellants was by warrant. However, the same was dismissed prior to a preliminary hearing when the grand jury returned a no true bill. This matter was eventually prosecuted under a valid indictment.

2. *See generally* Black's Law Dictionary.