# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs May 26, 2010

## STATE OF TENNESSEE v. DEBORAH N. COTTER

**Direct Appeal from the Criminal Court for Hamblen County**
**No. 08CR221     John F. Dugger, Jr., Judge**

---

**No. E2009-01849-CCA-R3-CD - Filed February 15, 2011**

---

The appellant, Deborah N. Cotter, was convicted by a jury in the Hamblen County Criminal Court of aggravated robbery and was sentenced to ten years in the Tennessee Department of Correction. On appeal, she argues that the evidence is insufficient to support her conviction, particularly because no witness identified her in court as the robber. She also contends that the trial court erred in arriving at her sentence. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and CAMILLE R. MCMULLEN, JJ., joined.

John S. Anderson, Rogersville, Tennessee, for the appellant, Deborah N. Cotter.

Robert E. Cooper, Jr., Attorney General and Reporter; Leslie E. Price, Assistant Attorney General; C. Berkeley Bell, District Attorney General; and Kimberly Morrison, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

This case arises out of a robbery at a Morristown gas station. Edna Valez testified that she had been a clerk at the Sunoco gas station on Buffalo Road for about four years. Around 3:45 a.m. on March 17, 2008, a woman came into the store and asked for a pack of cigarettes. When Valez asked the woman for identification, she returned to her car. Valez presumed that she was going to get her identification or a credit card.

Valez testified that the woman returned with a sweatshirt partially covering her head and carrying what appeared to be a gun under her shirt. The woman told Valez, "[W]e can do this the easy way or the hard way." Valez thought that the woman, whom she had never seen before, had a gun. Valez testified she was afraid. Therefore, she gave the woman approximately fifty dollars from the cash register. The woman left, and Valez immediately called the store's security company and the police.

When the police arrived, Valez told them what had occurred. Four video cameras recorded the events that night, but Valez was not shown the videos. The next day, Valez went to the police station and identified in a photographic line-up the woman who robbed her. She was "absolutely certain" that the person she identified was the robber. On cross-examination, Valez testified that she did not recall the woman having any scars or tattoos on her hands or face.

Norma Caudill, the manager of the Sunoco, testified that she had worked at the gas station for nearly fifteen years. The store's security company called Caudill to inform her of the robbery shortly after it occurred, and she went to the store.

Caudill testified that the police officers had already arrived when she got there. She watched the security camera videos with the officers and printed still photographs from the videos. Caudill gave the officers the videos. She counted the money in the cash register and discovered that there was approximately fifty dollars missing. She also allowed the officers to investigate the counter for fingerprints.

Chris Hall, an officer with the Morristown Police Department, testified that early on March 17, he was dispatched to the Sunoco to investigate the robbery. Sergeant Hall watched the footage from the security cameras. After viewing the videos, he told Detective Mark McElhaney, who was in charge of the investigation, that he suspected the appellant was the robber. On cross-examination, Sergeant Hall admitted that he did not compare the appellant's height to the height of the robber shown in the video.

Lieutenant Tony Belisle testified that he had been with the Morristown Police Department for about twenty-three years and that he supervised the department's activities at the Sunoco on the night of the offense. He watched the security camera videos and told Detective McElhaney that he thought the robber was the appellant. Lieutenant Belisle had seen the appellant a few weeks earlier. On cross-examination, Lieutenant Belisle said he was aware that fingerprints were found at the scene, but he did not know if any of them matched the appellant's fingerprints.

Detective McElhaney testified that he was called to the Sunoco around 3:45 a.m. on March 17 to investigate an armed robbery. When he arrived, he and other officers watched the security camera videos. While Detective McElhaney was not familiar with the appellant, Lieutenant Belisle and Sergeant Hall told him they thought she was the robber. Detective McElhaney also spoke with Valez and Caudill about the incident. Caudill sent the security camera videos to Detective McElhaney the next day.

Detective McElhaney prepared a photographic line-up for Valez to examine. The day after the robbery, Valez reviewed the line-up and identified the appellant as the robber. Detective McElhaney testified that he did not tell Valez who to look for in the line-up or pressure her to select anyone in the line-up. After Valez picked out the appellant's photograph, Valez and Detective McElhaney initialed and dated the photograph.

Detective McElhaney then obtained a warrant for the appellant's arrest, and officers brought her to the police station. The appellant signed a waiver of her Miranda rights and submitted to an interview. She denied involvement in the robbery and said she was at home with her family, talking on the telephone around the time of the robbery. Because Valez had told Detective McElhaney that the robber asked for a pack of Marlboro Red cigarettes when she first entered the store, Detective McElhaney asked the appellant what brand of cigarettes she smoked. She told him she smoked Marlboro Reds.

Detective McElhaney testified that his interview with the appellant increased his suspicion that she was the robber. In particular, Detective McElhaney thought it was suspicious that the appellant admitted to being awake at the time of the offense, that she smoked the same type of cigarettes requested by the robber, and that she wore shoes that looked similar to those worn by the robber on the security videotapes.

During his testimony, Detective McElhaney compared photographs of the appellant to images of the robber obtained from the security cameras. However, on cross-examination he admitted that he did not use the videos to estimate the robber's height. He also acknowledged that the shoes he obtained from the appellant had a large "N" on the side, but no "N" was visible on the robber's shoes in the videos. In addition, he testified that the investigation revealed identifiable fingerprints on the counter near the cash register which did not match the appellant's fingerprints.

On redirect examination, Detective McElhaney testified that he had been an officer with the Morristown Police Department for approximately sixteen years. He testified that he had been an evidence technician for several years and that he was familiar with searching for fingerprints on gas station countertops. He explained that often the countertops were

rarely cleaned, that the countertops usually contained numerous fingerprints, and that fingerprints could remain on a countertop for several months.

The defense called two witnesses. The first was the appellant's mother, Rebecca Cotter. She testified that she lived in a house with the appellant; the appellant's six-year-old son; and the appellant's brother, Jason.[1] The house was located approximately two miles from the Sunoco.

Rebecca testified that the appellant's son was ill at the time of the offense and needed attention throughout the night. She explained that he had enlarged tonsils that caused him to "[lose] his breath at nighttime" and that family members took turns staying up to care for him.

Rebecca recalled that she was responsible for caring for the appellant's son on the night in question. She testified that the appellant and the appellant's son, who shared a bedroom, went to bed around 10:00 p.m. that night. She said Jason returned home from socializing after evening church services around 12:30 a.m. Rebecca said that she went to her bedroom around 1:00 a.m. to read and listen for her grandson. She tended to her grandson around 2:00 a.m. and again at 3:15 a.m. The appellant was asleep in the room both times. Rebecca returned to the appellant's room around 4:45 a.m. to wake her. Rebecca was not aware of the appellant ever leaving the house that night.

On cross-examination, Rebecca admitted that she had been convicted of seven counts of passing worthless checks in 2004.

On redirect examination, Rebecca testified that the appellant had two scars on her face. She also testified that Jason was the only family member who had a car at the time of the offense.

The appellant's brother, Jason, testified that in March 2008 he was living with the appellant and her son at Rebecca's house. He said that he was the only person in the house who had a car and that he kept the keys on the nightstand next to his bed.

Jason testified that he returned from church and some post-church socializing around 11:00 p.m. that night As he walked to his room, he saw the appellant and her son asleep in their room. Jason went into his room, shut the door, and read for a while. He recalled

---

[1] Because the appellant, her mother, and her brother share the same surname, we refer to Rebecca Cotter and Jason Cotter by their first names for clarity. We mean no disrespect to these individuals.

hearing Rebecca check on the appellant's son during the night. Finally, Jason testified that the appellant had two scars on her face.

Based upon the foregoing, the jury found the appellant guilty of aggravated robbery.

At the appellant's sentencing hearing, the State submitted the appellant's "Criminal History Report" as an exhibit. The report revealed that the appellant committed two offenses while on bond in the instant case. Additionally, the report revealed that she had numerous prior convictions and that she had failed to complete previous probationary sentences.

The appellant testified that she was twenty-eight years old and that she had a seven-year-old son. She said that she had no prior felony convictions and that she had always followed the rules for her prior probations. She asked the court to impose the minimum sentence and said that she would abide by any rules imposed if she were given leniency.

The trial court sentenced the appellant as a standard Range I offender to ten years of confinement, noting that because of the nature of the offense, aggravated robbery, probation was not an option. Further, the court found no mitigating factors applicable but found three enhancement factors, namely (1) that the appellant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range," (8) that the appellant "has a previous history of unwillingness to comply with the conditions of a sentence involving release in the community," and (10) that the appellant "had no hesitation about committing a crime when the risk to human life was high." See Tenn. Code Ann. § 40-35-114(1), (8), and (10).

The court also considered the need for deterrence. Moreover, the court noted that the appellant had "been in and out of court, to be 28 years old, several times." The appellant's criminal history led the court to conclude that she lacked the potential for rehabilitation. However, the court stated that it was not going to impose the maximum sentence, explaining:

> [I]t was an aggravated robbery but it wasn't as bad as some. I've had cases where . . . defendants hold knives to clerks and tell them they're going to gut them like a fish and things like that. . . . This offense, the clerk testified that you said that we can do this the easy way or the hard way and you had something under your shirt and that she just opened up the cash register and handed you the money and you walked out and she walked over to the telephone. It was an in-and-out type of situation. Pretty uneventful. The jury didn't think it was too eventful because they didn't . . . set a fine. [In m]any cases . . . jury[ies] will

come back with a maximum fine when they're mad, which gives me the clue that they're upset about it and they want a serious sentence, but you do have three enhancement factors. But I don't think this aggravated robbery [deserves] the maximum sentence, okay? Just the facts and circumstances. I mean, the jury came back with no fine. But still, other people need to be deterred from doing aggravated robberies. You have committed an offense while on bond. You do have a criminal history. So I'm going to set your sentence at ten years.

The appellant appeals, arguing that the evidence was insufficient to support her conviction and that the trial court erred in setting her sentence.

## II. Analysis

### A. Sufficiency of the Evidence

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). As was charged in the instant indictment, a robbery is aggravated when it is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1).

The evidence in the record, when viewed in the light most favorable to the State, satisfies these elements. The evidence revealed that the second time the appellant came into the Sunoco, she had partially covered her face and had what appeared to the clerk to be gun

under her shirt. The appellant told the clerk, "[W]e can do this the easy way or the hard way." Certain the appellant had a gun, the clerk gave her approximately fifty dollars from the cash register, and the appellant fled. The security camera videos corroborate the clerk's testimony. The foregoing evidence demonstrates that the appellant intentionally or knowing stole money from the Sunoco by placing the clerk in fear and that she did so by displaying what the clerk reasonably believed was a gun. See Tenn. Code Ann. §§ 39-13-401(a), -402(a)(1). While the appellant produced alibi witnesses, the jury obviously discredited their testimony. Because there was an adequate basis to do so, we defer to the jury's decision.

The appellant also contends that the State did not prove that she was the robber, asserting that the victim failed to identify her as the perpetrator in the courtroom. However, "[t]he identity of the defendant[] is a question of fact solely for the jury." State v. Phillips, 728 S.W.2d 21, 25 (Tenn. Crim. App. 1986). The record reflects that the State's witnesses routinely referred to "Deborah Cotter" or "Tasha," one of the appellant's nicknames, as the person who committed the robbery. Additionally, there were multiple photographs of the individual who robbed the store, the individual who Valez identified in the photographic line-up, and the individual the police subsequently arrested. The jury was free to compare the photographs to each other, to the appellant, and to the witnesses' testimony. Finally, Detective McElhaney specifically referred to the appellant as "the defendant" during his testimony. Based on the identity evidence in the record, we conclude that the State adequately established the appellant was the robber.

## B. Sentencing

The appellant next challenges the length of the sentence imposed by the trial court, arguing she should have been sentenced to the minimum sentence of eight years. Appellate review of the length, range, or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in her own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of her sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this

court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

Although the trial court should consider statutory enhancement and mitigating factors, they are advisory only. See Tenn. Code Ann. § 40-35-114; State v. Carter, 254 S.W.3d 335, 343-44 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. "[A]ppellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence . . . [and are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

In the instant case, the trial court determined that the appellant was a standard Range I offender. In determining the length of the sentence, the trial court applied three enhancement factors and no mitigating factors. In particular, the court applied the following enhancement factors: (1) that the appellant "has a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range," (8) that the appellant "before trial or sentencing[] failed to comply with the conditions of a sentence involving release into the community," and (10) that the appellant "had no hesitation about committing a crime when the risk to human life was high." Tenn. Code Ann. § 40-35-114(1), (8), and (10).

The record reflects that the appellant has a significant history of misdemeanor convictions, including three convictions for fraudulent use of a credit card, two convictions for theft of property less than $500, one conviction for driving under the influence, three convictions for driving on a suspended license, and one conviction for possession of a Schedule II drug. Therefore, we conclude that the trial court correctly found that the appellant had a previous history of criminal convictions in addition to those necessary to establish the sentencing range. Tenn. Code Ann. § 40-35-114(1).

Additionally, the trial court found that the appellant had violated probation on at least three prior occasions. Also, while on bond for the instant case, the appellant committed new offenses for which she received a probationary sentence that was subsequently revoked. Therefore, the record supports the trial court's application of enhancement factor (8). Tenn. Code Ann. § 40-35-114(8).

Regarding enhancement factor (10), the State concedes the trial court erred in finding that the appellant "had no hesitation about committing a crime when the risk to human life was high." Tenn. Code Ann. § 40-35-114(10). The State acknowledges this factor is inherent in the crime of aggravated robbery. We agree with the State and conclude the trial court erred in applying this enhancement factor. See State v. Jones, 883 S.W.2d 597, 602 (Tenn. 1994).

The appellant also argues that the trial court erred in not considering the following mitigating factors:(1) that the appellant's "criminal conduct neither caused nor threatened serious bodily injury," (6) that the appellant "because of youth . . . lacked substantial judgment in committing the offense," and (13) that the appellant had no history of violent crime. Tenn. Code Ann. § 40-35-113(1), (6), and (13). We disagree. The trial court considered the nature of the appellant's conduct when arriving at the sentence imposed. Further, the record does not reflect that the twenty-eight-year-old appellant lacked substantial judgment because of her age. Moreover, although the appellant has no prior violent crimes, she has a significant history of misdemeanor convictions.

Although the trial court misapplied one enhancement factor, the court nevertheless correctly found two enhancement factors applicable. The two other enhancement factors justified a sentence increased beyond the minimum and, in fact, would have justified the imposition of the maximum sentence. However, the trial court acknowledged the instant case was not the most egregious case of aggravated robbery the court had seen and chose not to impose the maximum sentence.

### III. Conclusion

In sum, we conclude there is sufficient evidence to sustain the appellant's conviction and that the trial court did not err in imposing a sentence of ten years. Accordingly, we affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE