IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs October 4, 2011

## STATE OF TENNESSEE v. J'MENSKI C. HOLT

**Direct Appeal from the Circuit Court for Madison County**
No. 10-27      Donald H. Allen, Judge

**No. W2010-02186-CCA-R3-CD  - Filed January 4, 2012**

A Madison County Circuit Court Jury convicted the appellant, J'Menski C. Holt, of aggravated robbery, and the trial court sentenced him to twelve years in the Tennessee Department of Correction. On appeal, the appellant contends that the evidence is insufficient to support his conviction and that his sentence is excessive. Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ALAN E. GLENN, JJ., joined.

Clifford K. McGown, Jr., Waverly, Tennessee (on appeal), and George Morton Googe and Gregory D. Gookin, Jackson, Tennessee (at trial and on appeal), for the appellant, J'Menski C. Holt.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Senior Counsel; Jerry Woodall, District Attorney General; and Brian Gilliam, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### I. Factual Background

The Madison County Grand Jury indicted the appellant for the June 2, 2009 aggravated robbery of the La Quinta Inn on North Highland Avenue in Jackson, Tennessee. At trial, Ashley Crouch testified that on June 2, 2009, she worked the 3:00 p.m. to 11:00 p.m.

shift as the manager on duty and the front desk clerk at the La Quinta Inn. She explained that after 6:00 p.m., she was the "only on-the-clock employee" at the hotel.

Crouch stated that around 9:15 p.m., she was sitting behind the front desk when two men entered the lobby area of the hotel. She stated that each man wore a dark blue or black t-shirt and black pants. Each man also wore a bandana to conceal the lower portion of his face, leaving exposed "his cheekbones, his eyes, and the whole forehead and his hair." She recalled that the men were between 5'8" and 5'11" tall and weighed approximately 170 or 180 pounds.

Crouch said that one of the men jumped over the front desk toward her. The men pulled out revolvers; the one behind the desk put his gun to Crouch's neck, and the other man pointed his gun at Crouch's head. The man beside Crouch told her not to look at him. Therefore, she "stared straight ahead" at the man on the other side of the desk. She said that she got a good look at that man and noticed that he had a high forehead and high cheekbones.

Crouch said that the man on her side of the counter ordered her to open the money drawer. When she complied, the man took the money inside, totaling approximately $148. He also grabbed Crouch's Blackberry cellular telephone. The man standing on the other side of the desk said that someone was outside and that they needed to leave. As soon as the men left, Crouch called 911. Within two minutes, the police arrived to take her report.

The following day, Crouch accessed her cellular telephone records and noticed that someone had made calls with her telephone after the robbery. She notified the police about the calls and gave Investigator Danielle Jones a copy of her telephone bill. Crouch also described the robbers to Investigator Jones. Later, Investigator Jones showed Crouch a photographic lineup of six men. Investigator Jones told Crouch, "You do not have to pick one out, and if you're not 100% sure, do not pick one out." Crouch looked at the photographs then asked Investigator Jones for a white piece of paper. After she got the paper, Crouch used it to cover the "mouth area" of each photograph so she could see only what had not been covered by the robbers' bandanas. Crouch further examined the photographs and identified the appellant as the perpetrator who stood on the other side of the desk. She likewise identified the appellant in the courtroom as one of the robbers. Crouch testified that the hotel had a video surveillance system, and she narrated the video of the robbery as it was shown to the jury.

Investigator Danielle Jones with the Jackson Police Department testified that she was off duty when the La Quinta Inn robbery occurred on June 2, but she began working on the case the next morning. Investigator Jones said that Crouch brought her cellular telephone records to the police station. Later, Investigator Jones had Crouch look at a photographic

lineup that was prepared based on Crouch's description of the robbers. Investigator Jones told Crouch, "If you're not absolutely positive on who the person is, don't make an ID." Crouch looked at the photographs and asked for paper to cover the lower halves of the faces in the lineup. Thereafter, Crouch identified the appellant as one of the robbers.

The State rested its case, and the appellant chose to not put on proof. Based upon the foregoing, the jury found the appellant guilty of aggravated robbery, a Class B felony, and imposed a fine of $25,000.

At the appellant's sentencing hearing, the State submitted the appellant's presentence report as an exhibit to the hearing. The report reflected that the appellant had a prior conviction for possession of marijuana, a Class A misdemeanor, and a juvenile adjudication for aggravated assault. The report further revealed that the appellant was twenty-four years old and had obtained his GED. The appellant reported that he began using marijuana when he was twelve years old, began drinking alcohol when he was sixteen years old, and began using cocaine when he was twenty-two years old.

Ashley Crouch testified that before the robbery, she was outgoing and went places alone. However, after the robbery, she felt "ripped of [her] independence" because she was afraid to be in public by herself. She also said that on her cellular telephone was an irreplaceable photograph that was taken of her and her father before her father died.

The trial court sentenced the appellant as a standard, Range I offender to twelve years in confinement, noting that because of the nature of the offense, aggravated robbery, probation was not an option. Further, the court found three enhancement factors, namely enhancement factor (1), that the appellant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range"; enhancement factor (11), that the felony "involved the threat of death or serious bodily injury, to another person, and the [appellant] has previously been convicted of a felony that resulted in death or serious bodily injury"; and enhancement factor (16), that the appellant had been "adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult." Tenn. Code Ann. § 40-35-114(1), (11), and (16).

The appellant now appeals, arguing that the evidence was insufficient to support his conviction and that the trial court erred in setting his sentence.

## II. Analysis

### A. Sufficiency of the Evidence

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

As charged in the instant indictment, aggravated robbery is robbery that is "[a]ccomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon." Tenn. Code Ann. § 39-13-402(a)(1). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a).

The proof adduced at trial reveals that the appellant and an accomplice entered the La Quinta Inn and held revolvers on Crouch, the front desk clerk. The accomplice directed Crouch to open the money drawer. The appellant told his accomplice that someone was outside and that they needed to leave. The perpetrators left, taking $148 and Crouch's cellular telephone. The appellant contends that the evidence was insufficient to establish his identity as one of the robbers. However, "[t]he identity of the defendant[ ] is a question of fact solely for the jury." State v. Phillips, 728 S.W.2d 21, 25 (Tenn. Crim. App. 1986). Crouch identified the appellant from a photographic lineup and in the courtroom as the robber who stood on the opposite side of the counter from her. Furthermore, the jury had the opportunity to view the surveillance video of the robbery and observe the appellant in the courtroom. Based on the evidence in the record, we conclude that the proof sufficiently established the appellant's identity as one of the robbers.

## B. Sentencing

The appellant next challenges the length of the sentence imposed by the trial court, arguing he should have been sentenced to the minimum sentence of eight years. Appellate review of the length, range, or manner of service of a sentence is de novo. See Tenn. Code Ann. § 40-35-401(d). In conducting its de novo review, this court considers the following

-4-

factors: (1) the evidence, if any, received at the trial and the sentencing hearing; (2) the presentence report; (3) the principles of sentencing and arguments as to sentencing alternatives; (4) the nature and characteristics of the criminal conduct involved; (5) evidence and information offered by the parties on enhancement and mitigating factors; (6) any statistical information provided by the administrative office of the courts as to sentencing practices for similar offenses in Tennessee; (7) any statement by the appellant in her own behalf; and (8) the potential for rehabilitation or treatment. See Tenn. Code Ann. §§ 40-35-102, -103, -210; see also State v. Ashby, 823 S.W.2d 166, 168 (Tenn. 1991). The burden is on the appellant to demonstrate the impropriety of his sentence. See Tenn. Code Ann. § 40-35-401, Sentencing Comm'n Cmts. Moreover, if the record reveals that the trial court adequately considered sentencing principles and all relevant facts and circumstances, this court will accord the trial court's determinations a presumption of correctness. Id. at (d); Ashby, 823 S.W.2d at 169.

Although the trial court should consider statutory enhancement and mitigating factors, they are advisory only. See Tenn. Code Ann. § 40-35-114; State v. Carter, 254 S.W.3d 335, 343-44 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." Carter, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" Id. at 343. "[A]ppellate courts are therefore left with a narrower set of circumstances in which they might find that a trial court has abused its discretion in setting the length of a defendant's sentence . . . [and are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." Id. at 346.

In this case, the trial court determined that the appellant was a standard, Range I offender. In determining the length of the sentence, the trial court applied three enhancement factors and no mitigating factors. In particular, the court applied enhancement factor (1), that the appellant "has a previous history of criminal convictions or criminal behavior in addition to those necessary to establish the appropriate range"; enhancement factor (11), that the felony "involved the threat of death or serious bodily injury, to another person, and the [appellant] has previously been convicted of a felony that resulted in death or serious bodily injury"; and enhancement factor (16), that the appellant had been "adjudicated to have committed a delinquent act or acts as a juvenile that would constitute a felony if committed by an adult." Tenn. Code Ann. § 40-35-114(1), (11), and (16).

On appeal, the appellant challenges only the application of enhancement factor (1), arguing that he had only one prior misdemeanor conviction. Specifically, he contends that

"[f]or any practical purpose[,] a misdemeanor marijuana charge should have virtually nothing to do with this sentence."

The record reflects that the trial court applied this factor based on the appellant's prior conviction and his admission in the presentence report that he abused illegal drugs from an early age and drank alcohol as a minor. For a Range I offender, any prior conviction, including a conviction for a misdemeanor, constitutes a previous history of criminal convictions. In the instant case, the appellant has not only a prior conviction but also a history of criminal behavior. Notably, the presentence report contains his admission that he began using marijuana at age twelve, that he used cocaine, and that he began drinking alcohol as a teenager. Therefore, the record supports the trial court's application of enhancement factor (1).

### III. Conclusion

In sum, we conclude there is sufficient evidence to sustain the appellant's conviction and that the trial court did not err in imposing a sentence of twelve years. Accordingly, we affirm the judgment of the trial court.

_____
NORMA MCGEE OGLE, JUDGE