# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### Assigned on Briefs December 6, 2011

## STATE OF TENNESSEE v. ROBERT WIGGINS

**Direct Appeal from the Criminal Court for Shelby County**
**No. 10-05180      Chris Craft, Judge**

---

**No. W2011-00977-CCA-R3-CD  - Filed May 29, 2012**

---

A Shelby County Criminal Court jury convicted the appellant, Robert Wiggins, of aggravated robbery, and the trial court imposed a sentence of eighteen years and six months in the Tennessee Department of Correction.  On appeal, the appellant contends that the evidence is insufficient to sustain his conviction and that the trial court erred by allowing hearsay testimony regarding the perpetrator's cellular telephone number.  Upon review, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court in which ALAN E. GLENN and JEFFREY S. BIVINS, JJ., joined.

Stephen C. Bush, Tony N. Brayton (on appeal), Nigel Lewis and William Yonkowski (at trial), Memphis, Tennessee, for the appellant, Robert Wiggins.

Robert E. Cooper, Jr., Attorney General and Reporter; J. Ross Dyer, Senior Counsel; Amy P. Weirich, District Attorney General; Thomas Henderson, David Zak, Betsy Weintraub, and Anita Spinetta, Assistant District Attorneys General, for the appellee, State of Tennessee.

## OPINION

### I.  Factual Background

The appellant's conviction stems from the robbery of Pizza Hut delivery man, Marcus Antonio Henry, Jr.  At trial, the victim testified that on the evening of March 29, 2010, a caller placed an order for two pizzas to be delivered to an address at Providence Place Apartments; the caller also provided a cellular telephone number.  Around 9:00 p.m., the victim tried to deliver the pizzas but was unable to locate the correct address.  He telephoned

the caller for further directions. The caller repeated the pizza order, provided directions, and told the victim he would be standing outside. The victim followed the directions and saw a man, whom he later identified as the appellant, standing outside. The victim pulled his car in front of the appellant, rolled down the window, and asked if the appellant had ordered pizzas. The appellant confirmed that he had placed the order.

The victim got out of his car with a bag containing the pizzas. The appellant said that he lived "right over here" and began walking down a pathway between two apartment buildings. The victim followed about three or four feet behind him. Shortly thereafter, the appellant turned around; pulled out a black, semiautomatic pistol; cocked the gun; pointed it at the victim's chest; and said, "[Y]ou know what it is, empty out your pockets." The victim dropped the pizza bag and began emptying his pockets of his cellular telephone, car keys, wallet, and about $20 cash. The appellant took the victim's belongings and put them in the pocket of his hoodie.

The appellant then ordered the victim to lie on his stomach on the ground. The victim complied, and the appellant ordered him to not get up. The appellant walked toward the tennis courts in the direction opposite from the victim's car. After the appellant left, the victim got up, flagged down a passing car, and asked the driver to borrow a telephone. The victim called the manager of the restaurant, who picked the victim up and drove him back to the restaurant. The victim then called police and reported the robbery. The victim estimated the incident lasted a minute to a minute and a half.

The victim told police that the perpetrator was a black male with a complexion similar to the victim. The victim said the perpetrator was a little under six feet tall, a little taller than the victim, and wore dark jeans and a black hoodie that did not cover his face. The victim gave the officers the order ticket for the pizza, which included the address and cellular telephone number given during the order.

The victim acknowledged on cross-examination that he was nervous when he saw the gun, but he stated that he and the perpetrator "looked right at each other." He said that he focused on the perpetrator's eyes. The victim maintained that there were several officers present when he gave a description of the perpetrator; however, only one officer was preparing the report. He believed that he told the officers the perpetrator had "facial hair," and he did not know why that part of the description was not included in any police report. The victim identified the appellant at the preliminary hearing and at trial as the person who robbed him.

Memphis Police Sergeant Matt Pugh testified that on March 31, 2010, he was assigned to investigate the robbery. He contacted the victim, who described the suspect and

the events surrounding the robbery, including the cellular telephone number given during the pizza order. After researching the telephone number, Sergeant Pugh constructed a lineup consisting of six photographs. He showed the victim the lineup, and the victim identified the appellant as the perpetrator. The victim asserted that he was certain of his identification, noting that during the robbery he had focused on the appellant's face. When the victim saw the appellant's photograph, he said that he remembered the appellant's face and recognized his facial hair.

Officer Samuel McMann testified that he was involved in the investigation and that he located the appellant. Officer McMann explained that he called the appellant's mother, and the appellant later returned the officer's call. The appellant said that he would meet Officer McMann at the Providence Place Apartments to turn himself in. At the meeting, Officer McMann arrested the appellant.

Based upon the foregoing, the jury found the appellant guilty of the aggravated robbery of the victim. The trial court sentenced the appellant as a violent offender to eighteen years and six months. On appeal, the appellant challenges the sufficiency of the evidence supporting his conviction and the admission of Sergeant Pugh's testimony regarding the cellular telephone number.

## II. Analysis

### A. Cellular Telephone Records

The appellant contends that Sergeant Pugh's "testimony that the cell phone number associated with this robbery belonged to the same individual identified by the victim in the photo spread should have been excluded under both Rule 602 and 802 of the Tennessee Rules of Evidence." In order to analyze this issue, we must first examine the factual context of the contested testimony.

Immediately prior to trial, defense counsel moved the trial court to prohibit the State from mentioning the appellant's prior convictions. The State informed the court that it had advised Sergeant Pugh to not discuss the appellant's prior arrests or convictions during the State's case-in-chief.

On direct examination at trial, Sergeant Pugh testified that the victim gave him a cellular telephone number for the person who had ordered the pizzas. The State asked Sergeant Pugh how he investigated the case, and Sergeant Pugh answered that he "queried the number in a local Memphis Police database and that number showed to have been . . . ." However, before Sergeant Pugh could finish his statement, the appellant objected on the

basis of hearsay. The trial court directed the State to ask another question.

The State then asked Sergeant Pugh if he had "verif[ied] whether that number belonged to anyone." Sergeant Pugh responded affirmatively and said that, after his investigation, he prepared a photograph lineup that included that person. Sergeant Pugh stated that the person the victim identified as the perpetrator was "the same individual who had that cell phone number."

On cross-examination, defense counsel repeatedly asked Sergeant Pugh if he had examined the victim's telephone records "[t]o verify that this number actually called that number on the night in question." Sergeant Pugh responded negatively, explaining that "[i]t wasn't really relevant since I had the number identified as being [the appellant's] already." Defense counsel objected but did not give a basis for the objection, and the trial court stated:

> Well, I think he – [defense counsel], you keep asking him the question. At some point he's going to have to answer it, so – and just so – ladies and gentlemen, we have something called "hearsay" when you hear somebody else say we don't usually try cases by rumor.
>
> . . . .
>
> So this police officer's not going to be allowed to talk about what other people said. They're not under oath, we don't know what they did or whether or not they were telling the truth. So for that reason . . . we just have to let the witnesses testify what's in their own personal knowledge and [not] what somebody else said.

Defense counsel then asked Sergeant Pugh if he had verified the telephone number through any "phone carriers." Sergeant Pugh said that he had not. Defense counsel asked if the number had been verified "[o]nly through a cross reference in your system," to which Sergeant Pugh responded, "Not only."

On redirect examination, the State asked, "[W]ere you able to verify that that was [the appellant's] phone number through other means?" Sergeant Pugh said yes and maintained that pursuing telephone company records at that point would "have been just a waste of resources."

Initially, we note that the admissibility of evidence lies within the sound discretion of

the trial court, and an appellate court will not interfere with the lower court's exercise of that discretion absent a clear showing of abuse. State v. Carruthers, 35 S.W.3d 516, 574 (Tenn. 2000); see also Pylant v. State, 263 S.W.3d 854, 871 n.26 (Tenn. 2008) (noting that the supreme court "continues to believe that questions concerning the admissibility of evidence are reviewed under an abuse of discretion standard"). The trial court's discretion in determining the admissibility of evidence is generally circumscribed by the Tennessee Rules of Evidence, including evidentiary rules of relevance.

The appellant's challenge to Sergeant Pugh's testimony is two-fold. First, the appellant contends that the admission of Sergeant Pugh's testimony violated the rules prohibiting hearsay. Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). As a general rule, hearsay is not admissible during a trial, unless the statement falls under one of the exceptions, which are enumerated in Rules 803 and 804, to the rule against hearsay. See Tenn. R. Evid. 802, 803, and 804.

The information elicited by the State was that Sergeant Pugh met with the victim and got a description of the perpetrator as well as the telephone number given by the caller. Sergeant Pugh "queried the number in a local Memphis Police database" and "verif[ied] whether that number belonged to anyone." Sergeant Pugh then prepared a photograph lineup that included that person. The State asked if the person the victim identified as the perpetrator "[w]as . . . the same individual who had that cell phone number," and Sergeant Pugh responded, "It was." Sergeant Pugh named the appellant as the person to whom the telephone number belonged only after defense counsel asked whether Sergeant Pugh had reviewed the victim's and the appellant's cellular telephone records. The trial court found that the testimony was not hearsay, noting that although Sergeant Pugh testified he found the identity of the phone's owner through a police database, "that's not anything that caused him to be guilty. That's just the way they approached him as a suspect." In other words, the trial court found that the testimony was not admitted for the truth of the matter asserted but was offered to show why the appellant's photograph was included in the lineup. We conclude that the trial court did not err by admitting the testimony.

Second, the appellant argues that Sergeant Pugh's testimony constituted a violation of Tennessee Rule of Evidence 602. The appellant, however, did not object on this basis at trial. Generally, a party is bound by the evidentiary theory argued to the trial court and may not change or add theories on appeal. See State v. Banes, 874 S.W.2d 73, 82 (Tenn. Crim. App. 1993). Therefore, "a defendant may not object to the introduction of evidence on one ground, abandon this ground, and assert a new basis or ground for the objection in this [c]ourt." State v. Aucoin, 756 S.W.2d 705, 715 (Tenn. Crim. App. 1988).

Additionally, the appellant did not raise this issue in his motion for new trial. It is well-settled that the failure to raise an issue of error, other than sufficiency of the evidence or sentencing, in a motion for a new trial waives that issue for purposes of appellate review. See Tenn. R. App. P. 3(e). Therefore, we conclude that the appellant has waived his Rule 602 issue.

## B. Sufficiency of the Evidence

On appeal, a jury conviction removes the presumption of the appellant's innocence and replaces it with one of guilt, so that the appellant carries the burden of demonstrating to this court why the evidence will not support the jury's findings. See State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). The appellant must establish that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. See Jackson v. Virginia, 443 U.S. 307, 319 (1979); Tenn. R. App. P. 13(e).

Accordingly, on appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. See State v. Williams, 657 S.W.2d 405, 410 (Tenn. 1983). In other words, questions concerning the credibility of witnesses and the weight and value to be given the evidence, as well as all factual issues raised by the evidence, are resolved by the trier of fact, and not the appellate courts. See State v. Pruett, 788 S.W.2d 559, 561 (Tenn. 1990).

Aggravated robbery is defined as robbery accomplished with a deadly weapon or by display of any article used or fashioned to lead the victim to reasonably believe it to be a deadly weapon. See Tenn. Code Ann. § 39-13-402(a)(1). Robbery is defined as "the intentional or knowing theft of property from the person of another by violence or putting the person in fear." Tenn. Code Ann. § 39-13-401(a). A theft of property occurs when someone, with the intent to deprive the owner of property, knowingly obtains or exercises control over the property without the owner's effective consent. Tenn. Code Ann. § 39-14-103.

At trial, the victim testified that the appellant pointed a gun at his chest and demanded that he empty his pockets. The victim said that he felt "scared" and "threatened" and that he complied with the appellant's demands. The appellant took possession of the items in the victim's pockets, namely a cellular telephone, a wallet, car keys, and some cash. These facts are sufficient to establish that an aggravated robbery occurred.

The appellant's sufficiency claim is based primarily on the victim's identification of the appellant. Specifically, the appellant asserts that the victim's identification of the appellant as the perpetrator of the offense is insufficient to support the verdict beyond a reasonable doubt because none of the descriptions the victim gave to police reflect that the

perpetrator had facial hair and because "[e]yewitness identifications are inherently untrustworthy."

Generally, the identification of a defendant as the perpetrator of the offense for which he is on trial is a question of fact for the jury upon consideration of all competent proof. State v. Strickland, 885 S.W.2d 85, 87 (Tenn. Crim. App. 1993); see also State v. Phillips, 728 S.W.2d 21, 25 (Tenn. Crim. App. 1986). The testimony of a victim identifying the perpetrator is, alone, sufficient to support a conviction. Strickland, 885 S.W.2d at 87-88. The victim testified that he immediately identified the appellant from the lineup and that he was "certain" of his identification of the appellant as the perpetrator. Regarding the facial hair, the victim maintained that he told police about the perpetrator's facial hair and said that he did not know why police failed to record that part of the description in the report. The victim also stated, "I can explain how . . . clothes look, black hoodie. You know, those are the things that I can explain [to] everyone but facial recognition is something that's in my head that I remember from when the gun was pointed on me." We conclude that the appellant's identity as the perpetrator was sufficiently established by the victim.

The appellant also complains that "there was no competent testimony linking the cell phone allegedly used to order these pizzas with the [appellant]." However, as we stated earlier, the victim called the telephone number for directions so he could deliver the pizzas, and the man who answered said that he would wait for the victim outside. When the victim saw the appellant at the location, he asked if the appellant had ordered pizza. The appellant confirmed that he had placed the order. Further, the victim positively identified the appellant as the perpetrator. This issue is without merit.

### III.  Conclusion

In sum, we conclude that the trial court did not err in admitting Sergeant Pugh's testimony regarding the cellular telephone and that the evidence was sufficient to sustain the appellant's conviction. We affirm the judgment of the trial court.

_____
NORMA McGEE OGLE, JUDGE